UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 09-CV-60726-JORDAN

EL-AD ENCLAVE AT MIRAMAR
CONDOMINIUM ASSOCIATION, INC., a
Florida not-for-profit corporation,

       Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY,
a foreign corporation, and GENERAL STAR
INDEMNITY COMPANY, a foreign
corporation,

       Defendants.

_____/

### MT. HAWLEY'S OPPOSITION TO MOTIONS OF PLAINTIFF AND ROBERT LEBLEU TO COMPEL PAYMENT FOR "DEPOSITION EXPENSE"

Mr. LeBleu, plaintiffs' designated expert, has been paid in full at his customary hourly rate for the time spent testifying at his March 30, 2010 in this matter and in El-Ad Residences v. Mt. Hawley (No. 09-CV-60723.) Moreover, he has now been paid for the "extra" 5.5 hours he included in his original invoice, over and above the time spent in deposition, and for an "extra" 3.25 hours (possibly by oversight of one of the other parties.) His current claim for additional compensation over and above the time spent at deposition (plus the "extra 8.25 hours) is unsupported. The Court should deny both Mr. LeBleu's and plaintiff's motions.

### FACTS

1.      Plaintiff designated Mr. LeBleu as a testifying expert on or about March 5, 2009. (D.E. 62, 62-5.)

     2.     That same day, March 5, 2005, Mt. Hawley served plaintiff with a notice of deposition of Mr. LeBleu for March 30, 2010.  (Exhibit 1, with attached copy of the subpoena.)  Mt. Hawley assumed that plaintiff's counsel would notify its expert of the date selected and communicate with Mt. Hawley regarding any scheduling problem.  Mt. Hawley heard no complaint regarding the March 30 date for Mr. LeBleu's deposition.  Mt. Hawley is not privy to what was said, if anything, by plaintiff's counsel to its expert regarding scheduling.

     3.     On March 29, 2010 at 12:14 pm, plaintiff's counsel Mark Keegan e-mailed Mr. Sims and co-counsel Scott Janowitz (counsel for defendants General Star and Westchester), confirming receipt of the earlier notice of the March 30 deposition for Mr. LeBleu, and stating that though he had not seen "proof" that Mr. LeBleu had been served with a subpoena, the El-Ad plaintiffs would "voluntarily produce Mr. LeBleu for deposition tomorrow. . . ."  (Exhibit 2.)

     4.     After receipt of Mr. Keegan's e-mail, Mr. Sims determined that Mr. LeBleu had not yet been served with a subpoena, and as a precaution, caused Mr. LeBleu to be served with a subpoena later on March 29, 2010 for his deposition the next day, March 30, 2010.  (Exhibit 3.)

     5.     As a testifying expert witness, Mr. LeBleu would customarily be entitled to receive his hourly fee for deposition time.  At no time, until months after the deposition, did counsel or Mr. LeBleu contend to Mt. Hawley that he should be compensated for "drive time," "rescheduling" other work, or anything else.

     6.     Mr. LeBleu appeared for his deposition on March 30, 2010.  He brought with him a copy of his file, which was copied for use at the deposition while he waited.  He was deposed by the four defendants in both the *El-Ad Enclave* and *El-Ad Residences* cases (Mt. Hawley, in each case; General Star, in *El-Ad Enclave*, and Westchester, in *El-Ad Residences*.)  The deposition began at 10:31 am and ended at 6:04 pm.  (Exh. 4.)

Total deposition time from start to finish, including breaks and a lunch break, was **seven hours, thirty-four minutes**.

7. Mr. LeBleu did not submit an invoice directly to Mt. Hawley or its counsel. Mt. Hawley and its counsel first saw Mr. LeBleu's invoice when it was attached as an exhibit to Enclave's August 2, 2010 motion to compel. Mt. Hawley later learned that Mr. LeBleu had submitted an invoice for $1950, representing a claimed 13 hours of time spent at deposition at $150 per hour, only to counsel for General Star (which promptly paid its ¼ share of Mr. LeBleu's invoice.)

8. On May 17, 2010, Mt. Hawley's counsel, Brian Sims and General Star/Westchester counsel, Scott Janowitz, received an e-mail from Mr. Siracusa complaining about something that someone from Mr. Janowitz's office allegedly told Mr. LeBleu regarding payment. (D.E. 151-2.) Mr. Janowitz responded appropriately the same day. (*Id*.) Mt. Hawley heard nothing further about Mr. LeBleu until Mr. Sims' receipt of a July 23, 2010 e-mail from Mr. Siracusa complaining that Mr. LeBleu (and another expert) had been trying to get payment "for many months." (Exh. 5.) Mr. Sims mistakenly assumed that by this time, Mt. Hawley must have received an invoice from Mr. LeBleu, and told Mr. Siracusa that he would check to see if it had been paid. (Exh. 6.)

9. A week later, on Friday, July 30, 2010, Mr. Siracusa's associate, Richard Valuntas, sent Mr. Sims an e-mail in which he stated that Mr. LeBleu's total bill was $1950, to be divided between the three carriers that had deposed Mr. LeBleu (Mt. Hawley counting twice, as it was a defendant in both *El-Ad Enclave* and *El-Ad Residences*). Mr. Valuntas threatened to file a motion to compel unless payment was immediately forthcoming. (Ex. 7.)

10. Plaintiff filed its motion to compel the following Monday, August 2, 2010. (D.E. 151.) Attached to that motion to compel was Mr. LeBleu's invoice, the first such

invoice that Mt. Hawley or its counsel had ever received. (D.E. 151-1.) Mr. LeBleu's invoice claimed that he was owed for **13 hours** at $150 per hour, or $1950.00. (*Id.*)

        11.     Mr. Sims wrote Mr. Siracusa in protest of the 13 hour invoice, since it far exceeded the total deposition time. Mr. Sims offered to pay its portion of seven and a half hours. (Ex. 8.) Mr. Siracusa rejected the offer. (Sims Decl. Ex. 9.) Mt. Hawley decided that it was not worth it to litigate over that amount of money. Mr. Sims requested Mr. LeBleu's W-9 information. (Ex. 10.) Mr. LeBleu responded with the W-9 information, and now, **for the first time**, attached a **second** invoice, for "Loss of Earnings." (Ex. 11.) Mr. Sims questioned this in an e-mail to Mr. LeBleu. (Ex. 12.) Mr. LeBleu responded that he had "lost work" in order to attend the deposition on short notice. **He also noted that he had been paid $487.50 for the deposition, to date.** (Id.) Mr. Siracusa confirmed that Mt Hawley could disregard Mr. LeBleu's claim for "lost income" and asked that Mt. Hawley simply pay its portion of Mr. LeBleu's deposition invoice. (Id.) **Mr. LeBleu subsequently confirmed that he had received an additional $975 from Westchester Claims.** (Exh. 13.) **Mt. Hawley then paid Mr. LeBleu $975, compensating him in full for his original 13-hour, $1950 invoice.** (Exh. 14.)

## ARGUMENT

Mr. LeBleu, a designated testifying expert in this matter, has been paid a total of $2337.50 on his original $1950 invoice for deposition testimony. In that invoice, Mr. LeBleu makes a claim for compensation for 13 hours at $150 per hour, despite the fact that his deposition clearly lasted no more than about seven and a half hours, including breaks and lunch.

Mr. LeBleu apparently believes that he should be compensated not only for the time actually spent at the deposition (plus five hours), but also for "lost income" that he "would have" received had he been able to re-schedule existing work, but for the fact of his "late" deposition subpoena, served the day before. This is a logical fallacy. If Mr.

4

LeBleu "lost work" that he could have been compensated for while testifying, he was nevertheless paid for that time at $150 per hour. Any "rescheduled" work would have to displace <u>other</u> compensable time. Accordingly, Mr. LeBleu has already been compensated for any "lost work" that he missed while testifying in these matters.

Further, neither Mr. LeBleu nor the El-Ads objected to the subpoena or deposition date, or moved to quash. Rather, the El-Ads told Mt. Hawley, Westchester and General Star, the day before the deposition, that they would "voluntarily" make Mr. LeBleu available, as previously noticed, whether or not he had been served with a subpoena. The El-Ads also told Mt. Hawley that it could disregard Mr. LeBleu's claim for "lost income."

In Mt. Hawley's view, Mr. LeBleu's original $1950 deposition invoice was already overstated by five hours, so when he was paid in full, he received a windfall of five additional hours. In addition, Mr. LeBleu has been overpaid the equivalent of an additional 3.25 hours beyond the original overstated invoice. Thus, by Mt. Hawley's calculation, Mr. LeBleu has now collected his hourly rate for just over double the amount of time he actually spent testifying. He cannot credibly claim that that he somehow "lost" over $3000 worth of additional work, over and above time spent testifying in this matter for which he has already been <u>doubly</u> compensated.

Nor can Mr. LeBleu credibly claim that he spent additional time "responding to discovery" that is compensable under Rule 26 (b)(4)(C). Mr. LeBleu's total "response" was to pick up his file folder, bring it to the deposition, and offer his testimony. Similarly, to the extent that Mr. LeBleu asserts that he was due additional compensation for travel, he was paid the appearance and travel fee when served with the deposition subpoena, and, as noted, he has already been paid for over twice the amount of time spent testifying.

For the foregoing reasons, the Court should deny both plaintiff's and Mr. LeBleu's motions to compel payment.

*Signature follows*

              Respectfully submitted,

Dated: September 3, 2010      MORISON HOLDEN DEREWETZKY
               & PROUGH, LLP

              By:  /s/Brian E. Sims
                Brian E. Sims

              MORISON HOLDEN DEREWETZKY & PROUGH, LLP
              William C. Morison, Esq.  (Pro Hac Vice)
              Michael D. Prough, Esq. (Pro Hac Vice)
              Brian E. Sims, Esq. (Pro Hac Vice)
              brian.sims@mhdplaw.com
              1550 Parkside Drive, Suite 300
              Walnut Creek, CA 94596
              Telephone:  (925) 937-9990
              Facsimile:  (925) 937-3272

              Latham, Shuker, Eden & Beaudine, LLP
              Daniel H. Coultoff, Esq.
              coultoff@lseblaw.com
              Florida Bar No. 994480
              390 N. Orange Avenue, Suite 600
              Orlando, FL 32801
              Telephone:  (407) 481-5800
              Facsimile:  (407) 481-5801

              Attorneys for Mt. Hawley Insurance Company